

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | |
|---|---|
| **ELIZABETH DUNCAN, f/k/a** ) | |
| **Elizabeth Crosslin, and DEBORAH** ) | |
| **STORIE,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **vs.** ) | **Civil Action No. 06-S-1076-NE** |
| ) | |
| **GOLDEN ROD BROILERS, INC.,** ) | |
| **MARY FAY INGRAM, and** ) | |
| **WILLIAM INGRAM,** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM OPINION

This Fair Labor Standards Act case settled after plaintiffs accepted defendants'

offer of judgment. *See* Fed. R. Civ. P. 68.[1] The offer of judgment contemplated an

award of damages to each plaintiff, and also provided for an award of costs and

attorney fees in an amount to be determined by the court. Accordingly, the court

entered a partial final judgment, awarding the damages agreed to by the parties, and

also ordered plaintiffs' counsel to file a properly supported motion for fees by June

20, 2008.[2] That motion (as amended several days after the filing deadline), and

---

[1] *See* doc. no. 74 (Notice of Acceptance of Offer of Judgment).

[2] *See* doc. no. 76 (Partial Final Judgment).

defendants' responses in opposition, are now before the court.[3]

## I.  PRELIMINARY MATTERS

Since the offer of judgment stipulates that the attorney for each plaintiff was to be paid "reasonable attorney fees," this court's task is simply to review the charges and determine whether they are reasonable by reference to a constellation of considerations outlined in several seminal cases.[4]  *See, e.g.*, *Hensley v. Eckerhart*, 461 U.S. 424, 433-34 (1983); *Norman v. Housing Authority of the City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988); *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).[5]  Before reaching the primary reasonableness inquiry, however, the court pauses to note that it finds several aspects of the fee petitions filed on behalf of plaintiffs' attorney to be, to say the least, disconcerting.

The court anticipated a motion for fees sufficient to compensate the sole attorney who represented plaintiffs throughout the course of this litigation:  William

---

[3] *See* doc. no. 79 (Motion for Attorney Fees); doc. no. 80 (Amended Motion for Attorney Fees); doc. no. 81 (Motion to Strike Amended Motion for Attorney Fees); doc. no. 82 (Response in Opposition to Motions for Attorney Fees).

[4] *See* doc. no. 70 (Offer of Judgment).

[5] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.  This includes the *Johnson* decision, in which the former Fifth Circuit created a twelve-factor scheme for evaluating the reasonableness of attorneys' fees.  *Johnson*, 488 F.2d at 717-19.  In *Hensley*, the Supreme Court reformulated the calculus for computing a reasonable fee, but specifically "acknowledged that district courts may continue to consider the twelve factors outlined by the former Fifth Circuit in *Johnson*."  *Association of Disabled Americans v. Neptune Designs, Inc.*, 469 F.3d 1357, 1359 n.1 (11th Cir. 2006) (citing *Hensley*, 461 U.S. at 434 n.9).

C. Porter of Cullman, Alabama.  As it turns out, however, Mr. Porter decided to engage *another* attorney, John A. Wilmer of the Huntsville law firm known as Wilmer & Lee, to represent his clients "for work necessary to prosecute the fee and expense claims."[6]  Although this court is not aware of any person who would argue that Mr. Wilmer is anything less than a first-rate counselor, the court cannot fathom why his $350.00 per hour services (for a total of $2,887.50) were required for the elementary task of assembling the perfunctory, two-page fee petition that was filed in this case.

As if this was not sufficiently aggravating, a review of the amended motion for fees reveals charges from other supernumerary attorneys as well.  In directing Mr. Porter to file a motion for fees, the court indicated that he should buttress his accounting of time by including "affidavits addressing the necessity for such time, the reasonableness thereof, and the customary fees paid in the same community for similar services."[7]  Arguably, these materials were not strictly necessary; indeed, it is well established that "the trial court itself is an expert on issues surrounding attorneys' fees and may consider its own knowledge and experience in reaching judgment," *Sweeney v. Athens Regional Medical Center*, 917 F.2d 1560, 1567 n.5 (11th Cir. 1990), but the court generally has no qualms about imposing such

---

[6] Doc. no. 80, at 1.

[7] Doc. no. 76, at 2.

requirements, because experience has shown that attorneys provide such opinions to their fellow advocates free of charge, as a matter of professional courtesy. *See, e.g.*, *Norman*, 836 F.2d at 1304 (reviewing affidavits that were "given out of courtesy"). Never before has the court encountered a situation in which the attorneys who offer affidavits in support of a fee petition bill the movant for the service, whereupon the movant then attempts to pass that cost along to the opposing party by requesting an award of fees for the affiant's time. That, however, is the scenario the court currently confronts with regard to the affidavits of Birmingham attorney C. Michael Quinn, and Huntsville practitioner Bradley P. Ryder. For their opinions and affidavits (*which were apparently drafted by Mr. Wilmer*), Mr. Quinn billed $1,125.00, and Mr. Ryder billed $750.00.[8] So much for professional courtesy.

On top of the aggregate amount of $4,762.50 that Mr. Porter requests for the three attorneys who assisted him with his fee petition, he asks the court to award him $2,942.50 in additional fees incurred after he filed his clients' notice of acceptance of the offer of judgment. Defendants object to *any* post-acceptance billing on the ground that the offer of judgment was not expressly intended to provide Mr. Porter with compensation for time spent on the fee litigation. The court overrules this objection because it finds nothing unseemly about requesting compensation for

---

[8] *See* doc. no. 80, Ex. 1, at 3-4.

attorney time spent litigating a fee dispute that, if successful, would save his clients money. *Cf. Villano v. City of Boynton Beach*, 254 F.3d 1302, 1309 (11th Cir. 2001) (holding that "post-judgment advocacy may generally be included in a § 1988 [attorney's fee] award."). This ruling is essentially immaterial, however, for the court has two other problems with Mr. Porter's post-acceptance billing.

First, the court notes with keen interest that four and one-half hours of this post-acceptance time was allegedly devoted to simply drafting the fee petition itself, "with case authority."[9] Without the inclusion of this quoted language, the court might puzzle over a question raised by this line-item: *i.e.*, what exactly did *Mr. Wilmer* do to accumulate upwards of three and one-half additional hours of time on the two-page motion that *Mr. Porter* drafted? The three extra words are immensely helpful in this regard, however: evidently Mr. Wilmer spent his time *excising the case authorities*, for none appear in the final draft filed with this court. The apparently duplicative nature of this post-acceptance work, and the excessive hours devoted thereto,[10] function to bar an award of fees for the time claimed. *See*, *e.g.*, *Norman*, 836 F.2d at 1301-02 ("Redundant hours generally occur where more than one attorney represents a client.").

---

[9] Doc. no. 79, Ex. 1, at 3.

[10] Reading the billing sheets of Mr. Porter and Mr. Wilmer side by side, it appears that they collectively devoted between *five and eight hours* on the *two-page* motion for fees. *Compare id. with* doc. no. 80, Ex. 1, at 1.

Second, nearly half of the post-acceptance time was, by Mr. Porter's own admission, "not entered [on billing sheets] contemporaneously with performance of the work," but was instead based upon his "[unsworn] recollection of the time spent."[11]  The court demands far more precision than this when awarding attorney fees, and will not consider such guesstimates competent evidence.  *See* doc. no. 5 (N.D. Ala. Uniform Initial Order), at 7 ("Counsel must maintain a separate record of time with a complete and accurate accounting of all time devoted to this particular action . . . , *recorded contemporaneously with the time expended*. . . . Counsel is **DIRECTED** to review and verify all attorney and non-attorney time records no less than once per month.") (emphasis in original); *id*. at 8 ("**Failure to comply with the foregoing requirements will normally result in attorneys' fees being disallowed.**") (emphasis in original).

Excepting the bloated four and one-half hours of time Mr. Porter allegedly spent drafting the fee petition (*all of which* was unnecessary, given that Mr. Wilmer devoted upwards of three hours to doing the same thing), and the additional hours that he did not record contemporaneously, Mr. Porter claims the right to compensation for 1.8 hours of post-acceptance time.  Recovery for these hours will be permitted.

As should be evident from the discussion above, however, defendants will not

---

[11] Doc. no. 79, Ex. 1, at 3.

be saddled with the aggregate sum of $4,762.50 that Mr. Porter requests for the assistance of Mr. Wilmer, and the opinions of Mr. Quinn and Mr. Ryder. Without any disrespect to Mr. Wilmer, his costly services were utterly unnecessary in this matter. Accordingly, Mr. Porter will be directed to personally reimburse Mr. Wilmer for his time, without passing that expense along to his clients, the plaintiffs herein. Likewise, if after reading this opinion Mr. Quinn and Mr. Ryder still insist upon payment for the professional courtesy of providing an opinion as to the reasonableness of Mr. Porter's claimed fees, the compensation should come from Mr. Porter's own pocket. Although Mr. Porter was directed to obtain at least one affidavit attesting to the reasonableness of the fees incurred in this matter, the court firmly believes that he could have acquired such an affidavit free of charge from attorneys who were already familiar with his reputation, and who would not need to devote time to familiarizing themselves with his background.[12]

## II.  CALCULATING THE LODESTAR

Having pared down the post-acceptance billing and excluded charges from other attorneys, the court proceeds to analyze the reasonableness of Mr. Porter's remaining charges.

"In calculating a reasonable attorney's fee award, the court must multiply the

---

[12] In their affidavits, both Mr. Quinn and Mr. Ryder note that they are not personally familiar with Mr. Porter's work.

number of hours reasonably expended on the litigation by the customary fee charged in the community for similar legal services to reach a sum commonly referred to as the 'lodestar.'" *Association of Disabled Americans v. Neptune Designs, Inc.*, 469 F.3d 1357, 1359 (11th Cir. 2006) (citing *Hensley*, 461 U.S. at 433-34; *Norman*, 836 F.2d at 1299). "The court may then adjust the lodestar to reach a more appropriate attorney's fee, based on a variety of factors, including the degree of the plaintiff's success in the suit." *Neptune Designs*, 469 F.3d at 1359 (citing *Hensley*, 461 U.S. at 435-36).

## A.    The Number of Hours Reasonably Expended

The first task is computing the number of hours reasonably expended on this litigation. *See Neptune Designs*, 469 F.3d at 1359. Excepting certain post-acceptance billing excluded above, Mr. Porter claims that he devoted 214 hours to this litigation. This figure must be blue-penciled for a variety of reasons. For starters, a review of the billing sheet indicates that 8.85 of the 214 hours were not recorded contemporaneously with the time expended.[13]  The Supreme Court has clearly held that "[w]here the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley*, 461 U.S. at 433.

In addition, and as noted in Part I of this opinion, the Uniform Initial Order

---

[13] The court notes that defense counsel's computation of these hours in her brief is incorrect. *See* doc. no. 83, at 4.

adopted by all judges in the Northern District of Alabama requires counsel to "maintain a separate record of time with a complete and accurate accounting of all time devoted to this particular action," and further provides that such "*be recorded contemporaneously with the time expended*."  Doc. no. 5 (N.D. Ala. Uniform Initial Order), at 7 (emphasis supplied).  This requirement exists because the court fully understands the less-than-perfect nature of human memory, and aspires to base fee awards on completely reliable sources.  Here, there can be no assurance as to the accuracy of the 8.85 hours not recorded contemporaneously, and fees for those hours will therefore not be awarded. *See id*. at 8 ("Failure to comply with the foregoing [recording requirements] requirements will normally result in attorneys' fees being disallowed.") (emphasis deleted).

This reduction brings the total number of hours down to 205.15.  Defendants cite several reasons why this figure should be reduced even further.  First, they criticize twenty-one separate line-items on Mr. Porter's billing sheet on account of his "block-billing" method — that is, the hours claimed are not segregated among discrete tasks; rather, they encompass two or more different tasks, without any explanation of how much time was spent on each.  It is true that courts frown upon block-billing. *See, e.g.*, *Norman*, 836 F.2d at 1303 (noting that "fee counsel should have maintained records to show the time spend on the different claims, and the

9

general subject matter of the time expenditures ought to be set out with sufficient particularity so that the district court can assess the time claimed for each activity") (citing *Hensley*, 461 U.S. at 437 n.12); *Reilly v. Duval County Public Schools*, No. 3:04-CW-1320-J--32MCR, 2007 WL 2120551, at * 2 (M.D. Fla. July 23, 2007) (noting that "block billing . . . makes it much more difficult to segregate out excessive time").

Even so, the use of the block-billing technique is not an absolute bar to recovery of fees where all tasks are properly billable, and "the time [billed] appears reasonable for the tasks described." *See Geutzloe Group*, *Inc. v. Mask*, No. 6:06-CV-404-Orl-22JGG, 2007 WL 2479335, at * 3 (M.D. Fla. Aug. 28, 2007).  In accordance with this principle, the court has reviewed the instances in which Mr. Porter engaged in block-billing to determine whether any of the discrete tasks identified in the entries seem frivolous.  For the most part, the court finds that the block-billing entries consist solely of necessary tasks, and that the time is not excessive for those tasks.  Several entries, however, blend arguably necessary attorney tasks with secretarial duties that should not be billed at the prevailing rate for lawyers:  *i.e.*,

- 4/21/2007   Finalize response to Defendant's motion for summ judg & *scan documents*

- 4/23/2007   *Copies* of Response to Summary Judgment, *Prepare Books* for Judge and Clerk, *Mail*

10

- 4/2/2008     Finish 1st draft of pre-trial order, *personally deliver* to Atty St. John

- 4/10/2008    Work on revised draft pretrial order and exhibits, *deliver draft* to Atty St. John

- 5/19/2008    Response to St. John email on mediation and motion to disqualify, talk to client Elizabeth Duncan on update of case, Trial preparation, work on exhibit books, *copying*, determining necessary exhibits

- 5/20/2008    Work on exhibits, *copies for trial books*, work on witnesses for trial, letter on settlement offer to St. John, conversations with both clients.[14]

These six omnibus entries account for a total of 20.75 hours.  At least one Circuit Court of Appeal has held that it is within the district court's authority to completely "eliminate[] hours spent on secretarial tasks from its calculation of the lodestar." *Harris v. L & L Wings, Inc.*, 132 F.3d 978, 985 (4th Cir. 1997).  In this Circuit, however, it appears that recovery for such time may still be had, but at a lower billing rate corresponding to the secretarial nature of the tasks.  *See, e.g., Johnson*, 488 F.2d at 717 ("[N]on-legal work may command a lesser rate.  Its dollar value is not enhanced just because a lawyer does it.").

Here, of course, due to Mr. Porter's block-billing technique, it is impossible to determine just how many of these 20.75 hours should be billed at a lower rate.  It is,

---

[14] Doc. no. 79, Ex. 1, at 1-3 (emphasis supplied).

of course, possible that nearly all of these hours were spent on such mundane tasks as making photostatic copies, scanning documents, and delivering and/or mailing correspondence.  On the other hand, those tasks may comprise just a sliver of the total.  Given that Mr. Porter could have easily avoided this conundrum by dividing up his billing in a more meticulous manner, the court believes it is he, and not defendants, who should be assigned the risk of loss.  Hence, the court will limit the billing rate for the entirety of these 20.75 hours, reducing the cumulative total of *attorney time* to 184.4 hours.

Next, defendants launch attacks on a variety of individual billing entries, arguing that the time spent on the tasks was excessive or unnecessary.  Defendants argue, for instance, that Mr. Porter should not be compensated for the 1.4 hours he spent objecting to mediation in this case.  The court, however, has on more than one occasion expressed its belief that mediation was not appropriate in this case.  Each time a formal request for mediation was made, the court denied it, often after hearing Mr. Porter's perspective on the matter.  Thus, these hours were reasonably incurred.

On the other hand, defendants are justifiably skeptical of the amount of time Mr. Porter spent on certain other tasks.  Setting aside the 19 or so hours that Mr. Porter devoted to researching relevant issues of law prior to initiating this lawsuit — time that the court considers reasonably spent — it took him 10 hours to *draft* the

12

simple, four-page complaint.[15]  This is *prima facie* unreasonable for an attorney who

has been practicing employment law since at least 1991.[16]  Taking into account the

length, the issues discussed, and the relative simplicity of the facts, the court

concludes that it was unreasonable to devote more than 5 hours to drafting the

original complaint.  Mr. Porter also devoted 8.5 hours to drafting the amended

complaint and second amended complaint.  The court cannot say that this amount of

time is obviously excessive, given that the first amendment resulted in a significantly

longer complaint, and the second amendment added a defendant.  However, one hour

of the 8.5 hours billed was listed as having occurred *the day after* the second

amended complaint was filed.[17]  This is clearly impossible, so that one hour shall be

deducted.  In summary, the court deducts 6 hours from the time billed for drafting the

complaints, bringing the total *attorney time* down to 178.4 hours.

Defendants also ask the court to examine and reduce the time Mr. Porter

devoted to certain motions that were ultimately unsuccessful because the denial of the

motions allegedly indicates that they were unnecessary.  The court would be dubious

of this argument except for the fact that Mr. Porter has implicitly agreed with it, at

least to a certain extent.  Both sides filed motions for summary judgment in this case,

---

[15] *See id.* at 1.

[16] *See id.* at Ex. 4, at 2.

[17] *See id.* at Ex. 1, at 1.

and both motions were denied.  Acknowledging this, Mr. Porter took the initiative and subtracted the time he spent on his clients' motion for summary judgment from the overall hours incurred.  Without holding that this action was necessary, the court honors it.  Additionally, in keeping with this spirit, the court notes that Mr. Porter failed to eliminate 2.5 hours of block-billing that included the notation "Prepare reply on Plaintiff's motion for summary judgment."[18] Given the elimination of the other charges for plaintiffs' summary judgment motion, this charge also should be excised, bringing the total *attorney* hours down to 175.9.

Defendants suggest that the court go farther and reduce the 23.6 hours (excepting hours already stricken above) spent by Mr. Porter when preparing a response to *their* summary judgment motions, since he had already performed considerable work on the same facts and issues when composing plaintiffs' dispositive motion.  The court finds this argument unavailing, for Mr. Porter has already eliminated any duplicative time by deducting all hours spent on his clients' summary judgment motion.  That is, since he actually billed work on each motion separately, but then later deducted all time spent on his clients' motion, his total time on dispositive motions has already been cut essentially in half.  The remaining time was clearly incurred by necessity and, therefore, the court sees no need for any further

---

[18] *See id.* at 2.

discussion or reduction.

Defendants also contend that any time spent by Mr. Porter on the following matters should be eliminated:  plaintiffs' motion to compel; plaintiffs' motion to strike; plaintiffs' opposition to defendants' motion to amend their witness list; plaintiffs' reply to defendants' motion to reconsider the motion to amend the witness list; plaintiffs' motion for leave to file an affidavit.  The proffered justification for elimination of these hours is that the positions taken in these motions and opposition briefs were either completely or partially rejected.  The court, however, knows of no cases holding that it is *per se* unreasonable to bill for motions that ultimately are not granted, and defendants point to none.  *Cf. Norman*, 836 F.2d at 1302 (noting the propriety of reducing the lodestar in view of discrete "unsuccessful *claims*") (emphasis supplied).  Moreover, it is at least theoretically possible that the time spent on these matters was necessary or helpful to the settlement, for — although courts do not like to encourage it — the hard fact of the matter is that much of litigation consists of wearing down one's opponent.[19]

Finally, defendants contest a variety of other billing items, claiming that the hours devoted to the tasks at hand were excessive.  Having reviewed these hours, the

---

[19] *See* Affidavit of C. Michael Quinn ("Quinn Aff."), at 3 ("The time spent in discovery, responding to correspondence and motions appears to be necessary to the successful result reached.").

court concludes that they are all within reason.  Accordingly, after taking into account all relevant considerations, including the length of the case (this action was filed over two years ago, on June 5, 2006),[20] the number of motions filed, the representation of multiple plaintiffs, and the contentious nature of the case, the court determines that the reasonable amount of *attorney time* expended on this case is 175.9 hours, plus 20.75 hours to be billed at a secretarial rate.  The next step is consulting the evidence and the court's own expertise to determine reasonable billing rates for this litigation.

## B.   The Reasonable Rates for Similar Services

The second component of the lodestar logic is the reasonable hourly rate.  Of course, it is the applicant for fees who bears the burden of producing satisfactory evidence substantiating the claimed rate, but the court also is a primary source of expertise on this matter.  *See Norman*, 836 F.2d at 1299, 1303.  The court's task of computing reasonable hourly rates is a sensitive one which is informed by "an analysis of the skills . . . exhibited by the attorney in the case at bar," *id*. at 1301, skills such as case assessment, expertise in negotiations, organization, knowledge of trial practice and substantive law, and persuasiveness.  *See id.*  On the final score, "[a] reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and

---

[20] *See* doc. no. 1 (Complaint).

reputation." *Norman*, 836 F.2d at 1299.  The relevant legal community is "the place where the case is filed," which in this case is the Northern District of Alabama. *American Civil Liberties Union of Georgia v. Barnes*, 168 F.3d 423, 437 (11th Cir. 1999).

Mr. Porter claims an hourly rate of $275, and offers the affidavits of C. Michael Quinn and Bradley P. Ryder in support thereof.  Defendants submit the affidavit of Huntsville attorney J. Jeffery Rich in opposition.  Mr. Rich believes that Mr. Porter's rate should be between $175 and $200 an hour.  The court is personally familiar with the work of the attorneys who have offered their opinions on this matter, and holds each of them in high esteem.  As mentioned above, however, Mr. Quinn, Mr. Ryder, and Mr. Rich all lack any personal familiarity with the work of Mr. Porter.  Therefore, their assessments of Mr. Porter's skills — which are based almost exclusively on his *curriculum vitae* — are not particularly persuasive.  This court has independently reviewed Mr. Porter's resume, and also had the benefit of seeing him in action throughout the course of this case.  Accordingly, the court finds itself better equipped than any of the affiants to evaluate Mr. Porter's claim to $275 an hour.

It is helpful to begin the analysis with a very brief biographical sketch.  Mr. Porter was an EEOC compliance officer for approximately eleven years.  Since entering the practice of law in 1991, he has reserved a portion of his practice for

17

employment cases. Nevertheless, he has filed just twelve such cases in the Northern District of Alabama since relocating his practice here in 1999.[21] The very fact that three of this District's most prolific employment lawyers have not been sufficiently acquainted with Mr. Porter to meaningfully evaluate his skills is at least some evidence that, however competent he may be, Mr. Porter is not among the preeminent employment attorneys in this District. The court says this not as a slight of any sort, but merely for the contrast it provides. Just recently, the court awarded John Saxon, who some assert to be among the most able labor and employment attorneys in the northernmost thirty-one counties of this state, $350 an hour. That award came after a long and hard-fought religion discrimination case that culminated in a sizable jury verdict for the plaintiff. The court was impressed with Mr. Saxon's work, and rewarded him accordingly. On the other end of the scale, the court not long ago awarded a highly-qualified partner in a large St. Louis law firm just $150 per hour for his work on a simplistic motion to compel in a purported class action filed under ERISA.

The present case falls somewhere in between these two examples. It was *far* less complicated (and required less work) than Mr. Saxon's case, and taking it on probably did not prevent Mr. Porter from also handling a wide variety of other cases.

---

[21] *See* Affidavit of J. Jeffery Rich ("Rich Aff."), at ¶ 5.

18

*See Johnson*, 488 F.2d at 717-19 (listing factors to be considered when setting reasonable hourly rates, including the time required, the preclusion of other employment, and the undesirability of the case).  Likewise, this case did not involve complicated issues of first impression, but it was certainly more involved than the single motion to compel that gave rise to the $150 an hour fee award mentioned above. *See id.*

Further, Mr. Porter's work was not altogether flawless, but neither was Mr. Saxon's.  As just one example, Mr. Porter needlessly engaged John Wilmer as fee counsel, when he could have handled the matter himself, resulting in the denial of recovery for certain hours.  Similarly, Mr. Saxon failed to file a proper accounting of hours in support of his fees, and was denied full recovery for time expended.  Both Mr. Saxon and Mr. Porter delivered for their clients, but not in kind.  Mr. Saxon vindicated his client in front of a jury of her peers, and obtained a substantial monetary recovery.  Mr. Porter negotiated a reasonable settlement, but did not prevail at a trial (or even on summary judgment), and his clients' recovery was much less than they originally desired. *See id.*  The extent of the victory will be considered more directly in the next step of the analysis, but it is worth noting at this stage that the settlement agreement negotiated by Mr. Porter did essentially ensure that his clients' recovery would not be reduced by the amount of the attorney's fee paid to Mr.

19

Porter.[22]  Taking all of these factors into consideration, and awards in similar cases, the court believes an appropriate hourly rate is $200.  *Cf. Dumas v. Tyson Foods*, *Inc.*, 139 F. Supp. 2d 1243, 1246 (N.D. Ala. 2001) (finding $215 a reasonable hourly rate in 2001 for an employment practitioner with 14 years' experience in this District, who achieved "significant results" in the case).

This leaves the task of assigning a proper secretarial rate for the 20.75 hours of block-billing that the court will presume was devoted entirely to copying and other administrative matters.  The court located several cases in which secretarial and paralegal rates have been computed.  *See*, *e.g.*, *id.* at 1246 (valuing paralegal time at between $30 and $60 per hour); *In Re Haggerty*, 215 B.R. 84, 86 (Bankr. M.D. Fla. 1997) (using a secretarial rate of $35.00 per hour); *Allen v. McClain EZ Pack of Alabama*, *Inc.*, No. 03-490-WS-M, 2005 WL 1926636, at * 5 (S.D. Ala. Aug. 8, 2005) (valuing paralegal time at $50 an hour).  In this court's judgment, Mr. Porter should be compensated for the 20.75 hours at issue at a secretarial rate of $35 an hour.  Accordingly, taking those hours into account, as well as the 175.9 hours of attorney time reasonably expended in this case, the lodestar recovery is $35,906.25.

## C.   Reductions to the Lodestar

---

[22] Under the terms of his engagement agreement with plaintiffs, Mr. Porter could actually take the greater of 40% of the amounts recovered by each plaintiff, or the attorney's fees awarded by the court, but the nature of the settlement virtually guaranteed that the contingency clause would not be relied upon.

As the Supreme Court held, "[t]he product of reasonable hours times a reasonable rate does not end the inquiry." *Hensley*, 461 U.S. at 434. Instead, "[t]here remain other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of 'results obtained.'" *Id.* The court also may consider other factors identified by the former Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974),[23] "though it should note that many of these factors are usually subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate." *Hensley*, 461 U.S. at 434 n.9.

Here, the court already consulted most of the *Johnson* factors in the course of conducting the principal analysis. The court adjusted the hours claimed to reduce or eliminate excessive expenditures of time and/or to ensure that the proper billable rate was attached to the hours at issue. Moreover, the court considered the novelty of the legal questions in the case, the level of skill required, the preclusion of other employment, the time commitment required by the attorney, and awards in similar cases. What the court did not consider directly, however, was "[t]he most critical factor in determining the award of attorney's fees": that is, "the degree of success that the party obtained." *Mills by Mills v. Freeman*, 118 F.3d 727, 733 (11th Cir.

---

[23] *See supra* n.5.

1997).  The court reserved this consideration because binding precedent indicates that the extent of success is to be factored in primarily *after* the lodestar is determined. *See Norman*, 836 F.2d at 1302 ("If the result was partial or limited success, then the lodestar must be reduced to an amount that is not excessive.") (citing *Hensley*, 461 U.S. at 436-37).  *See also*, *e.g.*, *Miller v. Kenworth of Dothan*, *Inc.*, 117 F. Supp. 2d 1247, 1263 (M.D. Ala. 2000) (noting that the district court may "adjust the lodestar, if necessary, to reflect a plaintiff's overall degree of success, making the award 'reasonable in relation to the results obtained'") (quoting *Hensley*, 461 U.S. at 440).

The cases do not point the court to any hard and fast formula for reducing the lodestar due to a party's limited success.  Courts in this Circuit do, however, often apply a broad percentage reduction to an attorney's fee after assessing "the results," a concept that includes the difference between the relief requested and that ultimately obtained.  *See Popham v. City of Kennesaw*, 820 F.2d 1570, 1581 (11th Cir. 1987) ("Therefore, in assessing the significance of Popham's recovery, the district court did not err in comparing the damages Popham sought with those he actually received."). Here, defendants point out that plaintiff Elizabeth Duncan previously demanded a total recovery of $25,389.32, and that plaintiff Deborah Storie demanded $4,200.[24] Pursuant to the terms of the engagement agreement with Mr. Porter, the plaintiffs

---

[24] *See* doc. no. 62 (Pretrial Order), at 3.

could expect to potentially have their recovery reduced by 40% to cover the contingency fee. This means that, even if Duncan had prevailed in full, she might have recovered just $15,233.59. Similarly, if Storie had prevailed in full, she might have recovered just $2,520. In the end, the plaintiffs accepted considerably less than even this reduced amount: Duncan settled for $6,438.64 (or roughly 42% of the original demand minus contingency), and Storie took $826 (or roughly 32% of the original demand minus contingency), but with the understanding that their respective attorney's fees would be covered by defendants.

In view of this limited success, granting Mr. Porter a full recovery would be inappropriate. *Cf. Hensley*, 461 U.S. at 440 ("[W]here the plaintiff has achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained."). Indeed, one is at first inclined to award him something on the order of 37% of his full fee (a 63% reduction), half-way between the 32% and 42% recoveries his clients accepted. Doing so would reduce Mr. Porter's fee to $13,285.31. It would also, however, require that the court ignore the risk that Mr. Porter accepted when he took on this case and agreed to pour his time, effort, and skill into it, without knowing what the eventual result would be. Under the terms of the engagement agreement, if his clients did not recover, Mr. Porter would not receive any fee. That would mean that the nearly 200 hours that Mr.

23

Porter reasonably expended in this case would be wholly *pro bono*.  If Mr. Porter

regularly billed at the hourly rate he now claims ($275) his wasted time would have

been worth approximately $55,000.  It is the gravity of this risk that fuels the

continued approval of the contingency fee arrangement, and it is that arrangement that

enables many poor litigants to have their day in court.  The existence of what may at

first seem like a windfall for Mr. Porter, then, should not be seen as a reason to reduce

his recovery.

Moreover, tying the amount of fees too tightly to the amount of damages

recovered is dangerous because it ignores the non-financial side of a victory, and

eschews the important societal interests that are vindicated when plaintiffs prevail in

civil actions against lawbreakers.  For this reason, the Eleventh Circuit has cautioned

that it is often improper to make "the amount of attorneys' fees recovered . . . a strict

proportion of the amount of damages that the plaintiff recovered."  *Powell v. Carey*

*International*, *Inc.*, 547 F. Supp. 2d 1281, 1297 (S.D. Fla. 2008) (citing *Andrews v.*

*United States*, 122 F.3d 1367, 1376 (11th Cir. 1997)).

Considering all facets of the extent of success in this matter, including the

intangible societal benefits and emotional boons for the plaintiffs, but also bearing

in mind the substantial difference between plaintiffs' demands and the eventual

settlement, the court believes that it is proper to reduce Mr. Porter's fees by 25% to

account for the limited success achieved. *Cf. Powell*, 547 F. Supp. 2d at 1297. In other words, Mr. Porter shall receive 75% of the lodestar amount, or $26,929.69. This amount is more than sufficient to compensate him; indeed, it is significantly greater than the recovery he could have expected had his clients prevailed on their original demands and he taken a 40% contingency fee. By the same token, it appropriately reflects the limited nature of the victory.

## III.  CONCLUSION

For the foregoing reasons, Mr. Porter will be awarded attorney's fees in the aggregate amount of $26,929.69. Plaintiffs also seek $1,255.36 in costs.[25] Defendants have not objected to this amount, and the court is satisfied that it is appropriate. All other pending motions will be denied as moot.[26] An appropriate final judgment consistent with this memorandum opinion will be entered contemporaneously herewith.

DONE this 22nd day of July, 2008.

_____
United States District Judge

---

[25] Doc. no. 79, at 1.

[26] *See* doc. no. 82 (Defendants' Motion to Strike Plaintiffs' Amended Fee Petition); doc. no. 84 (Plaintiffs' Motion for Extension of Time to File Reply to Opposition); doc. no. 86 (Defendants' Motion for Leave to File Surreply).

25